**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

| | | |
|---|---|---|
| **DENISE BOYD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-2317-STA** |
| | ) | |
| **RICH PRODUCTS CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Defendant Rich Products Corporation's Motion for Summary Judgment (D.E. # 17) June 9, 2011. Plaintiff Denise Boyd has responded in opposition, and Defendant has filed a reply brief. For the reasons set forth below, Defendant's Motion is **GRANTED**.

**BACKGROUND**

The following facts are not in dispute for purposes of this Motion unless otherwise noted. Denise Boyd was employed by Defendant as a Toppings and Icings Filler/Operator from June 13, 2005 until June 25, 2009. (Boyd Dep. 13:20-22, Apr. 27, 2011; Fields Aff. ¶ 4.) At the time of her termination on June 25, 2009, Plaintiff had exhausted all available leave time under the collective bargaining agreement between Rich Products and the Union ("the CBA"), which governed the terms and conditions of her employment. (Fields Aff. ¶ 5.) Plaintiff never filed a

grievance contesting either the leave she was placed on or her termination at the expiration of that leave. (Boyd Dep. 49:24-50:8; Fields Aff. ¶ 12.)

During Plaintiff's employment, Defendant operated up to eleven (11) production lines in the Toppings and Icings ("T&I") area: cookies-n-crème, pre-whip pail, on top 6, on top 8, vault, bag in box, quart, gallon, liquid pail, pudding (5 lbs. and units), and the can line. (Boyd Dep. 14:13-24; Cotner Aff. ¶ 3.) Not all eleven production lines are run on each day, and some lines are run more often than others. (Boyd Dep. 15:4-22; Cotner Aff. ¶ 4). Customer demand and the volume of product on hand determine whether a production line will run on a given day, and given the greater customer demand for the products which are produced on the three "on top" lines (on top 6, on top 8, and vault), the quarts line and the gallon line, Defendant runs those production lines a significant period of time. (Cotner Aff. ¶¶ 4, 5.) Plaintiff worked on the pre-whip pail line, which also runs every day. (Boyd Summ. J. Aff. ¶ 9.) Defendant will run at least one of the three on top lines every day of production, and the gallon line will run three or four days out of each week. (Cotner Aff. ¶ 5.)

Defendant assigns one Filler/Operator to each production line, and each Filler/Operator works one line per shift. (Cotner Aff. ¶ 5.) Defendant asserts that it does not assign a Filler/Operator to only one particular line, because that assignment would lead to inefficiencies, such as, if a particular Filler/Operator's line was not running a particular day, that employee would not have work. (Cotner Aff. ¶ 6.) As a consistent practice since opening the T&I area in 2004 and since awarding T&I Filler/Operator jobs under the CBA, Defendant has required persons in those jobs to rotate among all eleven production lines within T&I and has not permanently assigned any Filler/Operator to particular production line(s). (Boyd Dep. 14:25-

15:3; Cotner Aff. ¶ 7.) Plaintiff states that not all Filler/Operators rotate among the lines; Filler/Operators with the most seniority work the same lines and only on the lines they know how to work. (Boyd Dep. 61:23-63:15; Boyd Summ. J. Aff. ¶ 11.) Defendant maintains that single line assignment could also lead to safety concerns because some lines require more strenuous work than other lines. (Cotner Aff. ¶ 6.)[1] When Plaintiff was initially hired she primarily worked on the gallon line, but she eventually began rotating among all the lines. (Boyd Dep. 23:9-25:7.)

A Filler/Operator in T&I who wants to work in the Bowl area must bid on an open position in the Bowl area and be trained on how to work the three production lines within that area. (Cotner Aff. ¶ 10). Plaintiff admits that a Filler/Operator had to bid on a job in the Bowl area in order to work there. According to Plaintiff, she was to receive training on working in the Bowl area before her termination even though there was not an opening in that area. (Boyd Summ. J. Aff. ¶¶ 13, 14.) Nevertheless, Plaintiff has not worked as, and was not trained as, a Filler/Operator in Bowls. (Boyd Dep. 75:23-76:6.) Plaintiff's T&I Filler/Operator job duties involved frequent repetitive motion. (Boyd Dep. 51:16-52:16; Boyd Dep. ex. 5 & 6.)[2]

Defendant has a light-duty program for employees who have been injured on the job.

---

[1] Plaintiff states that she is not aware of these safety concerns. (Boyd Summ. J. Aff. ¶ 12.)

[2] This fact is supported in the written job description for the Filler/Operator position. In her deposition Plaintiff admitted that the job description referred to "frequent repetitive motion." Here, however, in response to Defendant's assertion, Plaintiff contends that some lines involved repetitive motion and others did not. While this may be true, Defendant's statement about "frequent repetitive motion" concerns the written job description, and not the tasks associated with any single line. At best, then Plaintiff's is an additional fact. Therefore, the Court finds that Plaintiff has not disputed Defendant's contention that the Filler/Operator job required "frequent repetitive motion."

(Fields Aff. ¶ 7). In that program, Defendant will return such employees to work in temporary light-duty job functions during the time they are recovering from injury. (*Id.*) Plaintiff was in the light-duty program at the time of her termination. (Boyd Summ. J. Aff. ¶ 18.) Defendant does not have any permanent light-duty assignments. (Fields Aff. ¶ 7.)[3]

On October 13, 2008, Plaintiff's treating physician, Dr. James H. Calandruccio, placed her on permanent restrictions which provided that Plaintiff was "disabled from [her] current repetitive job." (Boyd Dep. 39:25-40:2, Apr. 27, 2011; Boyd Dep., ex. 8; Fields Aff. ¶ 10.) Plaintiff believes that these restrictions did not disqualify her from her job. (Boyd Summ. J. Aff. ¶ 20.) When Plaintiff presented this note, Sabrina Fields, Defendant's manager of human resources, discussed with her Defendant's concerns that the doctor's note had disqualified her from her Filler/Operator position and that there were no other job vacancies at the time within the Arlington facility which did not require repetitive motion. (Fields Aff. ¶ 11.)[4] Under Article X, Section 7 of the CBA, Plaintiff had certain contractually provided leave of absence rights at that time, and Plaintiff was provided that leave. (Fields Aff. ¶ 12.) Plaintiff did not request this leave of absence and feels that Fields forced her to take it. (Boyd Summ. J. Aff. ¶ 23.)

Plaintiff filed a charge of discrimination with the EEOC in February 2009, which was the only EEOC charge Plaintiff filed. (Boyd Dep. ex. 11). In that charge, Plaintiff alleges that her

---

[3] Plaintiff disputes this statement and alleges that an employee named Wayne Lucky "was on what seemed to be permanent light duty." (Boyd Summ. J. Aff. ¶ 19.) However, in its reply, Defendant has adduced proof that it has never employed an individual named Wayne Lucky. (Fields Reply Aff. ¶ 3.)

[4] Plaintiff adds that Dr. Calandruccio never opined that Plaintiff could not work other equipment in her department.

not receiving a light-duty position was disability discrimination because others, "who have a disability have been placed in light duty position." (*Id.*) Plaintiff alleged that the discriminatory action took place on October 13, 2008. (*Id.*)

Under the terms of the CBA, Plaintiff's leave of absence was exhausted and her seniority terminated on April 13, 2009. (Fields Aff. ¶ 12.) Before Defendant implemented those provisions of the CBA, Defendant initiated discussion with Plaintiff, and on April 30, 2009, Fields met with Plaintiff to discuss whether the Plaintiff could return to work. (Boyd Dep. 73:7-74:25, Apr. 27, 2011; Fields Aff. ¶¶ 13, 14.) On May 18, 2009, Fields sent Plaintiff a letter in which Fields requested that Plaintiff provide updated medical information from Dr. Calandruccio in order to permit Defendant to further assess her ability to work. (Boyd Dep. Ex. 15.) On June 8, 2009, Dr. Calandruccio modified Plaintiff's work restrictions and stated that Plaintiff could work the following lines: pre-whip pail, bag in the box, cookies-n-crème on vanilla or peanut butter, liquid pails, pudding cups (3 and 4 ounces), and bowl lines 1-3. (Boyd Dep. 54:6-55:14, Apr. 27, 2011; Boyd Dep. Ex. 10.) Based on these new work restrictions, Plaintiff remained unable to work in five of the eleven production lines within T&I, and the five lines Plaintiff could not work were the 3 "on top" lines, the gallon line and the quart line, which were the more difficult and strenuous lines and involved more repetitive motion. (Boyd Dep. 64:9-66:17.)

If Defendant had created a light-duty Filler/Operator job, that job would have been subject to the bid process under the CBA. (Fields Aff. ¶ 15). If Defendant had simply reassigned Plaintiff to a newly created light-duty job without following the bid process, Defendant would

have violated the CBA. (*Id.*)[5] Defendant asserts that had it excused Plaintiff from working on the five lines that her doctor's note stated she could not work, Defendant would have had to hire another employee to work those lines or would have had to assign those duties to other Filler/Operators in T&I. (Fields Aff. ¶ 15; Cotner Aff. ¶¶ 6, 7.)[6] Based on Defendant's assessment that it could not reasonably accommodate Plaintiff's new restrictions and given that Plaintiff had exhausted all available leave time under the CBA, Defendant terminated Plaintiff's employment effective June 25, 2009. (Boyd Dep. 25:8-11; Boyd Dep. Ex. 16; Fields Aff. ¶ 18.) Plaintiff maintains that Defendant could have accommodated her by allowing her to work within her restrictions. (Boyd Summ. J. Aff. ¶ 28.)

During the time period from the beginning of Plaintiff's leave in October 2008 until her termination on June 25, 2009, there were only two job openings in hourly bargaining unit jobs at the Arlington facility: Sanitation Associate Class II and Sanitization Associate Class III, jobs which required repetitive movement and for which Plaintiff did not submit a bid. (Fields Aff. ¶ 13.)[7] Plaintiff also inquired about possibly working in the lab or the warehouse. (Boyd Summ. J.

---

[5] Plaintiff disputes this statement by asserting, "I believe that the Defendant could have accommodated me without having to post a light duty position." (Boyd Summ. J. Aff. ¶ 26.) Other than to state her subjective belief, Plaintiff has failed to adduce any evidence to dispute this fact. Therefore, the Court finds that it is undisputed for purposes of this Motion.

[6] The Court finds that this assertion is not directly set forth in the record. It does seem to be a possible inference from the facts averred in the Fields and Cotner affidavits. Plaintiff simply denies the assertion based on her belief that her requested accommodation would not have affected Defendant's other employees. (Boyd Summ. J. Aff. ¶ 27.)

[7] Plaintiff denies this statement because she does not have knowledge of which openings were available at the time of her termination. The Court finds that Plaintiff has not actually adduced evidence to contradict Defendant's statement. Therefore, the statement is undisputed for purposes of this Motion.

Aff. ¶ 29.)[8] There was no opening in the lab from October 2008 to June 25, 2009, the job would have been a promotion, and Plaintiff was not qualified for the position, given that she did not have a college degree. (Fields Aff. ¶ 19.)[9]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[11] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[12] It is not sufficient "simply [to] show that there

---

[8] Plaintiff adds that Fields had told her that she could not return to her regular position until "she was one hundred percent." (Boyd Dep. 78:23-79:7, Apr. 27, 2011.)

[9] Plaintiff states that she has no knowledge of the education requirements for working in the lab. (Boyd Summ. J. Aff. ¶ 30.) The Court finds that Plaintiff has not actually adduced evidence to contradict Defendant's statement. Therefore, the statement is undisputed for purposes of this Motion. Plaintiff further states that employees on light duty were permitted to work in the lab. Plaintiff has not adduced any evidence of employees working in the lab in permanent light-duty status. In fact, there is proof in the record that Defendant does not have any permanent light-duty assignments. (Fields Aff. ¶ 7.)

[10] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[11] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

[12] *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548.

is some metaphysical doubt as to the material facts."[13] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[14] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[15] However, the "judge may not make credibility determinations or weigh the evidence."[16]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[17] In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[18]

**ANALYSIS**

The ADA forbids a covered entity from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or

---

[13] *Matsushita*, 475 U.S. at 586, 106 S. Ct. 1348.

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

[15] *Id*. at 251-52, 106 S. Ct. 2505.

[16] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[17] *Celotex*, 477 U.S. at 322, 106 S. Ct. 2548.

[18] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[19] Plaintiff has alleged that Defendant discriminated against her on the basis of her disability by failing to offer her accommodations in the workplace and terminating her employment. With respect to her first theory, Plaintiff must adduce evidence that (1) she is disabled under the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) Defendant knew or had reason to know of the disability; (4) she requested an accommodation; and (5) Defendant failed to provide the necessary accommodation.[20] As for her disparate treatment theory, Plaintiff has the burden to show that (1) she is disabled; (2) she is otherwise qualified for the job, with or without a "reasonable" accommodation; (3) she suffered an adverse employment decision; (4) Defendant knew or had reason to know of her disability; and (5) the position remained open while Defendant sought other applicants or Plaintiff was replaced with someone outside her protected class.[21] Under either theory, Plaintiff must prove that she is disabled for purposes of the ADA and that she is otherwise qualified for her job, with or without reasonable accommodation.

On January 1, 2009, the ADA Amendments Act ("ADAAA" or "the Amended Act") took effect and further defined the terms of the ADA. The Sixth Circuit has found that "Congress enacted the ADA Amendments Act in order to 'reinstat[e] a broad scope of protection to be available under the ADA, and to overrule *Sutton* [*v. United Air Lines,* 527 U.S. 471, 489, 119 S.

---

[19] 42 U.S.C.A. § 12112(a).

[20] *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004).

[21] *Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011); *Monette v. Electronic Data Sys. Corp.*, 90 F3d 1173, 1186 (6th Cir. 1996).

Ct. 2139, 144 L. Ed. 2d 450 (1999)].”[22] Accordingly, the Amended Act counsels that “[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.” Likewise, the ADAAA and its implementing regulations offer additional guidance on the construction of key terms used to define a “disability.” For example, the Amended Act lists many examples of “major life activities,”[23] and the regulations extensively discuss the meaning of the phrase “substantially limits.”[24] However, the Sixth Circuit has held that the Amended Act does not apply retroactively to conduct that “occurred before the ADA Amendments Act became effective.”[25] Therefore, the Court’s initial task is to determine whether the Amended Act or the former version of the ADA should govern Plaintiff’s claims in this case.

Defendant has suggested that the case at bar “straddles” the ADAAA in that some events occurred prior to the Act’s effective date and others, including Plaintiff’s termination, happened after the effective date.[26] While admitting that Plaintiff filed a timely EEOC charge for her failure to accommodate claim, Defendant argues that Plaintiff never exhausted her ADA claim in

---

[22] *Milholland v. Sumner Cnty. Bd. of Educ.*, 569 F.3d 562, 566 (6th Cir. 2009) (citing Pub.L. No. 110-325, § 2, 122 Stat. 3553, 3554). In *Sutton*, the Supreme Court held that in determining whether an individual’s impairment has an effect on a major life activity, the courts should consider an individual’s use of correcting or mitigating measures. *Sutton*, 527 U.S. at 482, 119 S. Ct. 2139. In contrast, the Amended Act provides that “[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures.” 42 U.S.C.A. § 12102(4)(E).

[23] 42 U.S.C.A. § 12102(2)(A).

[24] 29 CFR § 1630.2(j)(1)(i).

[25] *Milholland*, 569 F.3d at 566.

[26] Def.’s Mem. in Support Mot. Summ. J., 6 n.9.

connection with her termination. The Court agrees. Under the ADA, a claimant who wishes to bring a lawsuit alleging a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination.[27] Otherwise, a claimant may not file suit under the ADA because she has not exhausted her administrative remedies.[28] It is undisputed that Plaintiff exhausted her ADA failure to accommodate claim when she filed a timely EEOC charge about the October 13, 2008 conduct. Plaintiff's EEOC charge, No. 490-2009-01019, was filed on February 12, 2009. Plaintiff stated in her charge that her request for a reasonable accommodation was denied by Defendant on October 13, 2008. On the portion of the form titled "Date(s) Discrimination Took Place," both the "earliest" and "latest" spaces were marked "10-13-2008." The EEOC issued Plaintiff a right-to-sue letter on January 27, 2010, and Plaintiff timely filed a judicial complaint on April 27, 2010. Plaintiff's Complaint alleges, "In direct violation of the Americans With Disabilities Act . . ., Defendant by its agents and employees, engaged in the discriminatory acts described in the Charge of Discrimination attached hereto . . . ."[29]

It is further undisputed that Plaintiff never filed an EEOC charge about her June 25, 2009 termination.[30] The Court does not have subject matter jurisdiction over an ADA claim "unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected

[27] *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (citations omitted).

[28] *Id.* (citations omitted).

[29] Compl. ¶ 8.

[30] Defendant raised this argument in its memorandum, yet Plaintiff has failed to address it in her response brief. Def.'s Mem. in Support, 16 n.19.

to grow out of the EEOC charge."[31] Although a charge may be liberally construed, an ADA plaintiff is not "excused from filing charges on a particular discrimination claim before suing in federal court."[32] The Supreme Court has held that "termination, failure to promote, denial of transfer, and refusal to hire" are discrete acts of discrimination, each "constitut[ing] a separate actionable 'unlawful employment practice.'"[33] "Each discrete discriminatory act starts a new clock for filing charges alleging that act" and "[t]he charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred."[34] The Sixth Circuit has held in the ADA context that termination and failure to accommodate claims, particularly insofar as they differ in kind and occur on different dates, are discrete acts.[35] As such, the Court holds that Plaintiff's termination and the alleged failure to accommodate, in this case occurring more than eight months apart, are discrete acts of discrimination, each of which must be exhausted administratively. Plaintiff never amended her initial charge or filed a separate charge setting out the facts about her termination. Therefore, Plaintiff's termination claim has not been administratively exhausted by filing of a charge of discrimination.

For the same reasons, the Court holds that Plaintiff's termination claim could not reasonably be expected to grow out of the investigation of her failure to accommodate charge. In

---

[31] *Jones v. Sumser Retirement Vill.*, 209 F.3d 851, 853 (6th Cir. 2000).

[32] *Id.* (citation omitted).

[33] *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).

[34] *Id.* at 113, 122 S. Ct. 2061.

[35] *Jones*, 209 F.3d at 853-54 (quotation omitted).

*Jones*, the Sixth Circuit emphasized that the facts relevant to an ADA plaintiff's termination claim were "far different' than the facts relevant to the plaintiff's accommodation claim.[36] The *Jones* panel further reasoned that the investigation of the termination in that case would not reasonably be expected to grow out the alleged failure to accommodate because the charge did not mention the date of the failure to accommodate and the failure to accommodate occurred approximately four weeks before the termination.[37] In this case, Plaintiff alleged in her EEOC charge that Defendant failed to accommodate her disability on October 13, 2008. Defendant terminated her employment on June 25, 2009, that is, more than eight months later. While it is true that Plaintiff did not receive her right-to-sue letter until January 2010, her termination occurred more than four months after Plaintiff filed her charge.[38] Based on the inherent differences between her accommodation claim and her termination claim and the fact that the two incidents happened some eight months apart, the Court holds that an EEOC investigation of Plaintiff's termination could not reasonably be expected to grow out of her charge.

---

[36] *Id*. at 854 n.1.

[37] *Id*. at 853-54. *Accord Moore v. Hexacomb Corp.*, 670 F. Supp. 2d 621, 632 (W.D. Mich. 2009) (distinguishing *Jones* where the employer's alleged failure to accommodate and the employee's termination occurred on the same day).

[38] *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 473 (6th Cir. 2008); *Cedar v. Premier Indus. Corp.*, No. 88-3340, 1989 WL 20615, at *4 (6th Cir. Feb. 28, 1989) ("Simply because the constructive discharge allegedly occurred during the period of EEOC jurisdiction over the claim, is no reason to assume the agency would discover this charge. The administrative agency had no way of knowing of such a claim because the alleged discharge had not yet occurred [when the charge was filed] and the agency would not be looking for or investigating discharge-related matters."). *Cf. Zanders v. O'Gara-Hess & Eisenhardt Armoring Co.*, No. 90-3927, 952 F.2d 404 (6th Cir. Jan. 9, 1992) (unpublished table decision) (holding that an EEOC investigation of an employee's termination was reasonably expected to grow out of a discrimination charge where termination occurred the day after employee filed his EEOC charge).

Therefore, the only conduct for which Plaintiff has exhausted her administrative remedies occurred in October 2008, that is, prior to the effective date of the ADA Amendments Act. Plaintiff's claim for her termination in June 2009 is not properly before the Court. As previously discussed, the Sixth Circuit has concluded that the Amended Act does not apply retroactively to acts that occurred prior to January 1, 2009. As a result, the Court is bound to apply the law construing the former version of the ADA and not the standards set forth in the Amended Act.

Pursuant to the former version of the ADA and the case law construing it, the Court concludes that Plaintiff has failed to show that she is "disabled" as the ADA had defined the term prior to the Amended Act. The ADA defines a "disability" with respect to an individual as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."[39] "Proof of a disability is a threshold requirement to prove a violation of the ADA."[40] The Supreme Court has concluded that "[m]erely having an impairment does not make

---

[39] 42 U.S.C. § 12102(1)(A) (2009); 29 C.F.R. § 1630.2(g)(1). In this case Plaintiff's Complaint also alleges that Plaintiff was "regarded as having such impairment." *See* Compl. ¶ 6; *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105-06 (6th Cir. 2008) ("For the purposes of this appeal, we will assume without deciding that because the statute defining disability includes 'regarded-as-disabled' discrimination, the original complaint may have implicitly encompassed a regarded-as claim."). The ADA makes it illegal for an employer to discriminate against an employee because the employer "regards" the employee as "disabled." 42 U.S.C. § 12102(1)(C). Even though Plaintiff has pled this theory of disability discrimination, Plaintiff has not briefed it at the summary judgment stage and has otherwise failed to offer any proof to support such a claim. More specifically, Plaintiff has failed to show that Defendant "ascribe[d] to [her] an inability to perform the functions of a job because of a medical condition when, in fact, [she was] perfectly able to meet the job's duties." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001). Therefore, the Court will not consider this claim.

[40] *Burns v. Coca-Cola Enter., Inc.,* 222 F.3d 247, 253 (6th Cir. 2000).

one disabled for purposes of the ADA."[41] A claimant must also establish that her impairment "substantially" limits one or more "major life activities."[42] According to the EEOC regulations, promulgated pursuant to the ADA,

> "substantially limited" means "unable to perform a major life activity that the average person in the general population can perform"; or "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."[43]

The Supreme Court in *Toyota* held that the requirement that an impairment "substantially" limit a major life activity "precludes impairments that interfere in only a minor way . . . from qualifying as disabilities."[44] The Court also held that the phrase "major life activities" refers "to those activities that are of central importance to daily life."[45] Generally, an "impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation" under the ADA.[46]

Applying these standards to the case at bar, the Court holds that Plaintiff's impairment is not a "disability" for purposes of the ADA. Plaintiff has adduced evidence that she suffers from

---

[41] *Toyota Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

[42] *Id.* at 196.

[43] *Id.* at 195-96 (quoting 29 C.F.R. § 1630.2(j)).

[44] *Id.* at 196.

[45] *Id.*

[46] *Mahon v. Crowell,* 295 F.3d 585, 590-91 (6th Cir. 2002).

carpal tunnel syndrome and that this impairment affected her ability to perform her job duties at Rich Products. In her deposition, Plaintiff testified that her carpal tunnel causes numbness in both of her hands and affects the following activities: sleeping, walking, and manual tasks such as driving, writing and gripping. For purposes of this Motion, the Court assumes that each of these is a major life activity. However, Plaintiff has not adduced evidence that her ability to perform these activities is substantially limited as compared to most people in the general population. The Court will analyze each activity in turn.

First, Plaintiff has shown that her carpal tunnel causes numbness or tingling in her hands during her sleep, which will wake her one or two nights of the week. (Boyd Dep. 32:3-10; 32:21-33:11.) Plaintiff did not testify about how long the numbness disrupted her sleep on those nights or how much sleep she loses during the flare-ups. Based on this evidence, the Court concludes that Plaintiff has not shown that her carpal tunnel substantially limits or significantly restricts her ability to sleep as compared to most people in the general population.

Second, Plaintiff has testified that her carpal tunnel impairs her ability to undertake manual tasks such as writing or gripping and removing a bottle cap. Plaintiff stated that "it was hard to grip or open a bottle cap to drink" but that she did not have this difficulty every time she attempted to grip an object. (*Id.* at 32:9-10.) Plaintiff has shown that she has difficulty writing only when she is "writing a long period of time." (*Id.* at 34:9-10.) Plaintiff testified that her hands will sometimes, but "not all the time," begin to tingle while she is driving. (*Id.* at 33:9-17.) The Court holds that just as with her sleep, there is no evidence that Plaintiff's impairment substantially limits or significantly restricts any of these activities because of their intermittent nature.

Finally, Plaintiff has presented proof that her carpal tunnel affects her while walking. Plaintiff stated that every time she walks she experiences swelling in her hands and some tingling in her arms. (*Id.* at 32:21-24.) Plaintiff did not specify whether swelling occurred when she walked only for a few feet or whether it occurred only after she had walked for some extended period of time. Thus, Plaintiff has not provided evidence about the condition or duration of the impairment's effect on her ability to walk. Plaintiff added that on occasion her fingers will lock up when she walks but that this "comes every now and then" and not everyday. (*Id.* at 33:24-34:3.) Based on the record before the Court, the Court holds that Plaintiff's impairment does not significantly restrict her ability to walk although reasonable minds could conclude that Plaintiff's carpal tunnel makes walking very uncomfortable for her.

In sum, the Court holds that Plaintiff has failed to show that her impairment is a disability. Plaintiff has shown that her carpal tunnel at times limits her ability to perform more than one major life activity. Nevertheless, Plaintiff has not demonstrated that she is "significantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." Therefore, the Court concludes that Plaintiff is not "disabled" in that she is not substantially limited in performing a major life activity.

The Court adds that the major life activity of "working" has been treated as "a residual category resorted to only when a complainant cannot show she is substantially impaired in any

other, more concrete major life activity."[47] An individual is substantially limited in the major life activity of working if the claimant is precluded from more than one type of job, a specialized job, or a particular job of choice.[48] If jobs utilizing an individual's skills are available, one is not precluded from a substantial class of jobs.[49] In order to show that a claimant is precluded from a substantial class or broad range of jobs, courts must compare the claimant's access to jobs to the access available to a non-injured individual with similar training and experience, looking specifically to the labor market in the claimant's geographic vicinity.[50] Plaintiff has not adduced any such evidence in this case and has not even argued that she is "disabled" by virtue of her carpal tunnel's impact on the major life activity of working. Therefore, the Court finds that this theory is unsupported in this case.

Because proof that Plaintiff is "disabled" for purposes of the ADA is a threshold issue, the Court holds that Defendant is entitled to summary judgment on Plaintiff's claims. Therefore, Defendant's Motion is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

---

[47] *Gerton v. Verizon South Inc.*, 145 F. App'x 159, 167 (6th Cir. 2005) (citing *Mahon,* 295 F.3d at 590). The Supreme Court in *Toyota* held that a claimant's inability to perform job-related activities due to carpal tunnel syndrome did not raise a genuine issue as to whether the plaintiff could perform manual tasks and that it was error to "focus[ ] on the [the claimant's] inability to perform manual tasks associated only with her job." 534 U.S. at 200, 122 S. Ct. 681.

[48] *Gerton*, 145 F. App'x at 167.

[49] *Id.*

[50] *Id.*

Date: August 16, 2011.